UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN F. WYATT,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | No. EDCV 15-1961 SS<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

Susan F. Wyatt ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying request for her social security benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of

the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for Title XVI Supplemental Security Income ("SSI") on January 25, 2012.[1] (Administrative Record ("AR") 226-32). Plaintiff alleged a disability onset date of September 1, 2010. (AR 228). The Agency denied Plaintiff's application on July 6, 2012. (AR 93-96). Plaintiff filed a request for reconsideration on July 24, 2012. (AR 98-100). The Agency affirmed the denial of Plaintiff's claim on September 18, 2012. (AR 101-03). On November 15, 2012, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (AR 104-06).

A hearing before an ALJ was scheduled for June 28, 2013 at the Agency's office in Boise, Idaho. (AR 135-36). However, upon Plaintiff's request, the Agency transferred jurisdiction of the claim to the Agency's office in Moreno Valley, California on June 28, 2013. (AR 141-46). A hearing was then scheduled at the Agency's Moreno Valley, California office for January 27, 2014. (AR 155-59). However, on January 8, 2014, Plaintiff's counsel withdrew from representation following the transfer of jurisdiction. (AR 179). On January 13, 2014, Plaintiff requested a continuance from the Agency to retain new counsel. (AR 181).

---

[1] Plaintiff filed a joint SSI application with her husband, Armand Beckwith Collins. (AR 226-32).

2

Plaintiff retained Mario A. Davila as her representative on January 17, 2014. (AR 207). Plaintiff retained Valerie Garcia as her representative on February 17, 2014. (AR 225).

Plaintiff testified at a hearing before ALJ Marti Kirby on February 19, 2014 ("Hearing"). (AR 44-65). Vocational Expert ("VE") Luis Mas also testified. (AR 61-64).

The ALJ issued an unfavorable decision on March 6, 2014. (AR 21-43). Plaintiff filed a timely request for review with the Appeals Council ("Council") on April 2, 2014, (AR 19), which the Council denied on July 25, 2015. (AR 1-5). The ALJ's decision thus became the final decision of the Commissioner. Plaintiff filed the instant action on September 23, 2015. (Dkt. No. 1).

### III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.
(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

4

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

\\
\\
\\
\\
\\
\\
\\

**IV.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since January 25, 2012.[2] (AR 26). At step two, the ALJ found that Plaintiff had four "severe" impairments: depression, anxiety, personality disorder, and PTSD. (AR 26). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 28).

At step four, the ALJ determined that Plaintiff retained a Residual Functional Capacity ("RFC") to "perform a full range of work at all exertional levels" subject to the following non-exertional limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds; she cannot work at unprotected height, around moving machinery, or other hazards; she cannot do a job requiring hypervigilance or intense concentration on a particular task, meaning she cannot do a job in which she could not be off tasks for the briefest amount of time, like watching a surveillance monitor or where

---

[2] Plaintiff alleged a disability onset date of September 1, 2010. (AR 31). However, in his decision, the ALJ did not provide a detailed discussion of the Plaintiff's medical history prior to January 25, 2012, the date the initial SSI application was filed, because it was of "limited relevance." (AR 31).

6

>safety might be an issue; she is limited to unskilled nonpublic work; she can have occasional non-intense interactions with coworkers or supervisors; and she cannot do fast paced production of assembly line type of work.

(AR 29).

In making this finding, the ALJ considered Plaintiff's subjective allegations, but found them not credible and "inconsistent with the objective medical evidence." (AR 30). The ALJ also rejected the statements of Plaintiff's husband. (AR 31). The ALJ gave "great weight" to the opinions of the State agency psychological consultants in his decision and rejected the opinion of Plaintiff's treating physician, Dr. Denise Dittemore, as "inconsistent with the objective medical evidence as a whole." (AR 35-36).

Finally, at step five the ALJ considered Plaintiff's age, education, work experience and RFC, and concluded that she could perform jobs available in significant numbers in the national economy. (AR 37). The ALJ noted that, due to Plaintiff's "nonexertional limitations," she could not be expected to perform work at "all exertional levels." (AR 37). However, considering the VE's testimony, the ALJ found that Plaintiff could find employment in small parts assembly, as a swatch clerk, or as a photocopy machine worker. (AR 37). Therefore, the ALJ concluded that Plaintiff was not disabled under the Agency's rules. (AR 38).

7

# V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by "substantial evidence" in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).
\\
\\

**VI.**

**DISCUSSION**

Plaintiff argues that the ALJ failed to provide reasons supported by substantial evidence for rejecting the opinion of her treating physician, Dr. Dittemore. (Plaintiff's Memorandum in Support of Complaint (the "MSC"), Dkt. No. 17, at 5). Plaintiff further argues that the Appeals Council erred in refusing to consider new medical evidence material to the determination of disability. (MSC at 12). The Court agrees with both contentions.

The record demonstrates that the ALJ failed to provide legitimate reasons for rejecting the opinion of Plaintiff's treating physician. In addition, the Appeals Council improperly excluded new medical information, which may be material to the disability determination. Accordingly, for the reasons discussed below, the Court finds that the ALJ's decision must be REVERSED and REMANDED.

**A. The ALJ Failed to Properly Consider The Opinion Of Plaintiff's Treating Physician**

Plaintiff asserts that the ALJ erred in rejecting the treating physician's opinion by improperly relying on isolated evidence of conservative medical treatment and intermittent improvements in Plaintiff's condition. (MSC at 7-9). The Court agrees.

\\
\\

9

In a disability determination before the Agency, the opinions of treating physicians are entitled to special weight because the treating physician is hired to cure, and therefore has a better opportunity to know and observe the claimant as an individual. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Where the Agency finds the treating physician's opinion well-supported by accepted medical techniques and consistent with the other substantive evidence in the record, that opinion is ordinarily controlling. 20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). When contradicted by another doctor, the treating physician's opinion is owed deference and given the "greatest weight." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ may not reject the contradicted opinion without providing "specific and legitimate" reasons, supported by substantial evidence in the record. See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

Dr. Dittemore treated Plaintiff from August 2013 through June 2014. (See AR 461-62, 465-66, 467-68). At Plaintiff's initial evaluation on August 15, 2013, Dr. Dittemore noted that Plaintiff was depressed, irritable and anxious. (AR 462). She diagnosed Plaintiff with bipolar disorder, generalized anxiety disorder and

\\
\\
\\
\\

post-traumatic stress disorder, and assigned a GAF score of 50.[3] (AR 461-62).

Plaintiff saw Dr. Dittemore again on January 3, 2014. (AR 467-69). Dr. Dittemore noted that Plaintiff suffered from "depression and low energy," and had "difficulty keeping up hygiene." (AR 468). She opined that Plaintiff's mental impairments had a moderate impact on her "ability to make judgments on simple work-related decisions." (AR 468). She also stated that Plaintiff had "extreme" limitations in her ability to "respond appropriately to usual work situations and to changes in a routine work setting." (AR 468).

The ALJ gave "little weight" to Dr. Dittemore's opinion that Plaintiff "did not have the mental capacity to engage in sustained work activity" because the opinion was "inconsistent with the objective medical evidence as a whole." (AR 36). Specifically, the ALJ rejected Dr. Dittemore's opinion because:

> The medication regimen was effective in controlling the [Plaintiff's] symptoms even when she complained of increased symptoms related to psychological stressors, lack of medication use, or drug use. This opinion is

---

[3] A Global Assessment of Functioning (GAF) score is the clinician's judgment of an individual's overall level of functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th Ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34.

11

> also inconsistent with Dr. Dittemore's own treatment records that document continued conservative treatment despite complaints of increased psychological symptoms and no referral for overnight inpatient psychiatric treatment.

(AR 36) (internal citations omitted).

As discussed more fully below, the Court finds that the ALJ's reasons for rejecting Dr. Dittemore's opinions were not "specific and legitimate reasons." Therefore, remand is required.

**1. The ALJ Erred In Rejecting Dr. Dittemore's Opinion On The Grounds That Plaintiff's "Medication Regimen Was Effective"**

The ALJ rejected Dr. Dittemore's opinion because Plaintiff's "medication regimen was effective in controlling [Plaintiff's] symptoms." (AR 36). The ALJ cited treatment notes from the staff of the Lifeways mental clinic ("Lifeways") from April 2011 – March 2013, (AR 333-71), indicating that Plaintiff's medication regimen was effective "even when [Plaintiff] complained of increased symptoms related to psychological stressors, lack of medicine use, or drug use." (AR 36).[4] In addition, the ALJ noted that Plaintiff's

---

[4] Plaintiff received treatment at the Lifeways mental health clinic while she was living in Oregon. (AR 34, 494). In 2013, Plaintiff moved to California, and began seeing Dr. Dittemore for treatment. (AR 34, 461). Although the ALJ's written decision includes a detailed summary of Plaintiff's treatment at Lifeways, the ALJ did not directly address the medical opinions of the Lifeways staff in

12

recent marriage and ability "to be cooperative and cordial during the hearing" undermined her claims of "extreme social limitations." (AR 36).

While the cited treatment note passages appear to show an improvement in Plaintiff's condition, the ALJ failed to mention that the records also show frequent fluctuations over the same period. For example, the ALJ cited a January 23, 2013 Lifeways report in which clinical staff noted that Plaintiff stated, "I feel so much better." (AR 445). However, the same medical report noted that the Plaintiff "is still having panic attacks, a couple times a week." (AR 445). Moreover, the ALJ ignored a follow-up medical report from February 19, 2013, in which Lifeways staff said Plaintiff "went from severe agitation, to crying, to having panic symptoms, all within minutes of one another." (AR 443).

Thus, the ALJ's reliance on a finding that the "medication regimen was effective in controlling [Plaintiff's] symptoms" reflects an overly selective reading of the record. This selective reading fails to constitute substantial evidence to discredit Dr. Dittemore's opinion. See Reddick, 157 F.3d at 723 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ may not reach a conclusion and justify it

---

his determination. (AR 36). Despite voluminous medical records from Lifeways clinical staff, the ALJ selected isolated evidence from the Lifeways treatment notes only to contradict Dr. Dittemore's findings. (AR 36).

13

by ignoring competent evidence in the record that would suggest the opposite result).

Moreover, even if the record consistently showed that medication improved Plaintiff's condition, this fact alone would not demonstrate that the Plaintiff was not disabled under Agency rules. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Kellough v. Heckler, 785 F.2d 1147, 1153 (4th Cir. 1986) ("'Feels well' and 'normal activity' must be read in context . . ."). Even while the ALJ nominally rejected Dr. Dittemore's opinion as "inconsistent with the objective medical evidence," the ALJ still "accommodated the limitations noted by Dr. Dittemore by precluding [Plaintiff] from jobs that require hypervigilance or intense concentration on a particular task, limiting her to unskilled nonpublic work with occasional non-intense interactions with coworkers or supervisors, and precluding her from fast paced production or assembly line type of work." (AR 36). Thus, the ALJ's own decision recognized the severity of Plaintiff's limitations.

Because the medical evidence demonstrates that Plaintiff continued to suffer from a serious mental impairment, the ALJ's finding that the medication regimen was "effective" in controlling her symptoms is not a legitimate reason to reject Dr. Dittemore's opinion.

### 2. The ALJ Erred In Rejecting Dr. Dittemore's Opinion On The Grounds That Plaintiff's Treatment Was "Conservative"

The ALJ found that Dr. Dittemore's opinion was inconsistent with Plaintiff's medical records because she received "conservative treatment despite complaints of increased psychological symptoms." (AR 36). In rejecting Dr. Dittemore's opinion, the ALJ only considered Dr. Dittemore's treatment records and not past records prepared by Lifeways staff. (AR 36). The full record shows that Plaintiff regularly sought mental health treatment since at least April 2011. (AR 370-71). Doctors prescribed Plaintiff a variety of medications to treat her mental illness, including Clonazepam, Seroquel, Sertraline, Trazadone and Wellbutrin. (See AR 333-70). Moreover, medication type and dosage were routinely adjusted in response to changes in Plaintiff's condition. (AR 333, 342, 353, 355-56, 358, 365-69).

The ALJ's characterization of Plaintiff's treatment as "conservative" is questionable. An ALJ may use evidence of "conservative care" to discount testimony regarding the severity of an impairment. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). However, a mental health medication regimen, involving numerous variations of medications and treatment and spanning multiple years is not fairly characterized as "conservative care." See Gentry v. Colvin, 2013 WL 6185170 at *18 (E.D. Cal. 2013) (holding that a multi-prescription medication regimen to treat anxiety disorder, major depressive disorder and PTSD did not

15

constitute "conservative care"). Accordingly, the ALJ's finding that Plaintiff received "conservative treatment" is not a legitimate reason to reject Dr. Ditte more's opinion.

**B. <u>The Appeals Council Improperly Excluded New Evidence Material To The Determination Of Disability</u>**

Plaintiff asserts that the Appeals Council improperly excluded new medical evidence relating to Plaintiff's condition prior to the ALJ's decision. (MSC at 13). The Court agrees.

When making a disability determination, "[i]f new and material evidence is submitted, the Appeals Council shall consider the evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). Medical evaluations done after the relevant time period are still relevant, if they relate back to the Plaintiff's condition during the time period at issue. See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011) (quoting Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996)). In Taylor, the court found that an Appeals Council was required to consider the results of a psychiatric evaluation conducted after the relevant time period because it concerned the status of a plaintiff's "mental impairments and limitations" before the period expired. Id. at 1232-33. Where the Appeals Council is required to consider new evidence but fails to do so, the district court must still consider a post-hearing physician's opinion as part of the court's "overall review of the ALJ's decision." Warner v.

Astrue, 859 F.Supp.2d 1107, 1115 (2012). The district court may remand the case to the ALJ to reconsider the decision in light of the additional evidence. Taylor, 81 F.3d at 1233.

This Court may remand a matter to the Agency if the new evidence is "material" to a determination of disability, and Plaintiff shows "good cause" for having failed to produce that evidence earlier. 42 U.S.C. § 405(g). To be material, the new evidence must bear directly and substantially on the matter at issue and there must be a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (as amended); Booz v. Secretary of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984). The good cause requirement is satisfied if new information surfaces after the Commissioner's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985). A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his claim has been denied. To demonstrate good cause, the claimant must show that the new evidence was unavailable earlier. Mayes, 276 F.3d at 463.

Here, Plaintiff submitted a Mental Impairment Questionnaire, completed by Dr. Dittemore, to the Appeals Counsel along with her request for review. (AR 307). Dr. Dittemore completed the questionnaire on March 11, 2014, five days after the ALJ's decision. (AR 307). In the questionnaire, Dr. Dittemore diagnosed

Plaintiff with bipolar I disorder, generalized anxiety and PTSD. (AR 307). She also opined that Plaintiff was "markedly limited in understanding and memory; concentration and persistence; social interactions, and adaptation; and would likely experience episodes of decompensation or deterioration in a work or work-like setting." (AR 307).

In denying Plaintiff's Request for Review, the Appeals Council acknowledged that it received new medical records dated March 11, 2014 and June 16, 2014. (AR 2). Plaintiff contends that the new evidence "could essentially have supported [Dr. Dittemore's] January 2014 opinion" regarding Plaintiff's mental health during the period under consideration by the ALJ. (MSC at 12). However, the Appeals Council summarily refused to consider the evidence because "the new information [was] about a later time." (AR 2). While the Appeals Council could have properly rejected new medical evidence relating to the five-day period between the ALJ's decision and the questionnaire's completion, it should have considered any information pertaining to the period prior to the ALJ's decision. The March 11, 2014 questionnaire included diagnoses for bipolar I disorder, generalized anxiety and PTSD. (AR 307). That diagnosis, made within five days of the ALJ's decision, was not "about a later time," but was consistent with Dr. Dittemore's diagnosis of the Plaintiff dating back to their first meeting on August 15, 2013. (AR 461, 480). The new evidence appeared to include the time period of Dr. Dittemore's treatment of Plaintiff, which includes the time period under consideration by the ALJ. Accordingly, the Appeals Council erred in excluding Dr. Dittemore's questionnaire

18

from its consideration because the new evidence related to the period before the date of the ALJ's decision.

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the Appeals Council improperly excluded new medical information for consideration by the ALJ, the case must be remanded to remedy this defect.

**VII.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 19, 2016           /S/
                          SUZANNE H. SEGAL
                          UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**